May it please the court, this appeal basically arises of a phantom Indian tribe that essentially arose out of nowhere and was able not long ago to obtain a gaming ordinance from the defendant, the federal government, and also obtain a tribal state compact approved by the federal government. The appellants in this case challenged those approvals under the Administrative Procedures Act on the basis, without going in great detail into the underlying facts, that there never was the creation, the lawful creation of an Indian tribe. And number two, the land upon which the federal government approved this Class III gaming casino was ineligible lands as defined by the Indian Gaming Regulatory Act, specifically Section 2703, Subdivisions 4 and 5, which require a valid Indian tribe to be in existence before gaming can occur. Mr. Murray, let me just ask you the status of that administrative challenge. As I understand it, there is or was a proceeding pending in Washington, D.C., challenging the issuance of the gaming permit and the recognition of the tribe, is that correct? There was an appeal filed and never got a response from the Secretary of the Interior to that appeal. So was that an administrative appeal within the Department of the Interior? Yes. And is that appeal still pending? I think it was just basically buried there. How long has it been pending? When did you file it? Four years ago, probably. Have you made any inquiries to ascertain what Interior is doing with it? No, other than this litigation. Was there anything filed in the D.C. federal courts? I thought that the county is challenging the D.C. Circuit Court, the compact amendment, which the Secretary approved by non-action, and there was a motion to intervene by the tribe for the purpose of moving to dismiss under Rule 19, and the district court dismissed that, and that dismissal is currently pending in the D.C. Circuit Court. That's what I saw in the record. Is that not correct? That is correct. The county had a challenge, some of the same issues that we've raised in our case, on appeal, and that immediately after the successful result that the trial got by making a special appearance and getting our case dismissed, they went in in that case, made the same motion to dismiss on the basis that they had to be joined as indispensable parties, and they couldn't be joined because of the fact that they were not a part of the case. So would a resolution of that appeal have any effect on us here? I'm not positive about that, because the issues as left by the district or the circuit court in Washington was what was the impact of an agreement that was reached between the county and the class defendants, or plaintiffs, rather, in the underlying case, and that was a question about what did that agreement mean. It was treated by the circuit court as a contract, which I think is correct, any agreement is a contract, and they asked, well, what does that mean? So they reversed, sent it back to the trial court for a trial presumably to determine what that 1987 agreement between the county and the class plaintiffs in that case meant. So that's still unresolved. Okay. Now, whether that would affect us, our position, as you probably know, I'm sure you've read the briefs, is that there never was a tribe in the first place, and secondly, the land on which they are proposing to build this class 3 casino is ineligible. But since we're looking at the Rule 19 issue here, not the underlying merits, my question was whether the D.C. Circuit's ruling on the motion to intervene, which relates to the tribe's motion to dismiss under Rule 19, whether that would have any effect on us. Well, I don't know. They didn't seek to intervene in this case. I think strategically they didn't want to do that because if they intervened, they'd be bound by the result of anything that occurred in the trial court. Rather, they asked Judge Shubb if they could make a special appearance before his court, claim that they were entitled to sovereign immunity, could not be joined and had to be joined under Rule 19, and therefore our case should be dismissed. I'm not sure of that response to Judge Akuta's question. As I understand the question, I don't mean to jump on your question, but I have the same concern. I'm trying to figure out, aren't these same plaintiffs involved in that case in D.C. that challenges the validity of the compact? No, it's just the county of Amador. But who is the county of Amador suing? They're suing the Secretary of the Interior, so I think it's the same defendant. Okay, so they have not moved to intervene in that proceeding and there's been no Rule 19 challenge raised there? That's true. So the tribe, I thought, was trying to raise the Rule 19 challenge. I mean, that's my somewhat confusion. I know it's the county in that case and the friends of the county in this case, but it's otherwise the same players and the same issues. Not quite, because the county's issue is a 1987 agreement that was made between the plaintiffs and the class action and the county. The federal government was not a party to that agreement. Our suit against the federal government, not wanting to be redundant, involves the approval of a gaming ordinance for a tribe that we feel doesn't exist lawfully. Their own Bureau of Indian Affairs representative, Mr. Riesling, reached that conclusion in 2001, that my client's bee crab tree in June Gary had to have been located by the BIA and perhaps other potential descendants for a proper organization of the tribe in the first place. Okay, well, maybe it would be helpful to move away from the D.C. Circuit, away from the merits, and just explain why the district court was wrong in dismissing on Rule 19 grounds. Well, one thing is because obviously if our challenge is the existence of an Indian tribe in the first place, I don't understand how they could come before the district court and say, well, we're an Indian tribe entitled to sovereign immunity. But I thought you conceded that they were federally recognized. I mean, whether that was correct or not correct, if you look them up in the BIA's regulation, then they're a federally recognized tribe. And I didn't see that you were arguing that point. Well, that's an interesting question, because the way it worked was Donna Marie Potts. But is that correct? They're listed as federally recognized tribes. The name of this putative tribe appeared on the list, Part 83 list, of tribes eligible for services and benefits. So you want to make a collateral attack on the recognition of that, that tribe is federally recognized. Is that correct? In part, we feel a collateral attack has already been made by Rhonda Pope, who then got Mr. Reisling, the district director from the BIA, to agree that the tribe was not properly organized in the first place. That's step one. To be in an Indian tribe, you have to be properly organized. So our feeling is that to come into court later and say, well, we're entitled to sovereign immunity before you've even established your existence as a lawful Indian tribe, is a rather fundamental issue. So you need, though, to be successful in delisting the tribe, and that hasn't happened yet, correct? Right, and I think we suggested to Judge Shub that that was a possible alternative, short of dismissal, is have an ancillary hearing and determine if these people claiming sovereign immunity are entitled to be an Indian tribe in the first place, because if they're not, then they're not entitled to any sovereign immunity. But he obviously didn't follow that. I guess back to the question I started with, isn't that challenge most properly initiated in the Department of the Interior? In other words, why shouldn't you first petition to delist or derecognize, if there is such a term, the tribe? And if the Department of the Interior rejects your petition, then bring an action in federal court, I guess it would be on a petition for review to the Court of Appeals, from a final decision of the Secretary of the Interior denying the relief that you request. Well, that's true, except that it doesn't deal with the issue of the ineligibility of the land, so that even if it were determined that this tribe were somehow lawfully placed on the Part 83 list, existed as a lawful Indian tribe, it doesn't deal with the issue of the BIA and the NIGC approving gaming on a piece of ineligible land. But the problem with your legal position is Congress has established the Department of the Interior as the initial arbiter of what constitutes Indian land and who is a recognized tribe, and that is how you end up on the Part 83 list. So why shouldn't you first have to exhaust administrative remedies before you can come to a federal court claiming, I guess, what would be a violation of the Administrative Procedures Act for an arbitrary and capricious decision? On the recognition issue, that's one. The eligibility list, I think, or excuse me, rather, the ineligible land is a separate issue, which I think could be challenged without an exhaustion of administrative remedies. I mean, I thought the present state of the law was that Congress had delegated to the Department of the Interior those decisions. I mean, if you go back through history, it's varied over time. We used to do it by treaty, then we did it by act of Congress, and then I guess Congress decided it wanted to get out of the business of negotiating directly with tribes, and so it turned all those responsibilities over to the Secretary of the Interior. I don't disagree with that, except that once it's turned over to the Secretary of the Interior and the Secretary of Interior makes a decision, as they did in this case in June of 2005, Penny Coleman's letter saying they can game on this land at Buena Vista. Well, the state of the record is that as far as the Interior is concerned, this is both Indian country and a recognized tribe. And so how did the district court err when it took the current recognition by the Department of the Interior at its word and said, I've got before me a recognized Indian tribe, and it is claiming sovereign immunity, which recognized tribes are entitled to do. You are challenging the very existence of the tribe, which suggests to me that the tribe needs to be there in order to protect its interests. The government, the United States apparently, has a potential conflict, or at least they waffled when Judge Shub asked them whether they could adequately represent the interests of the tribe. And I just don't see how we can get around the sovereign immunity bar on the current state of recognition. Well, Chris, a lot of those points your Honor is making deal with the merits of the case, which we were never able to present. The Rule 19 dismissal leaves us, the plaintiffs, no recourse anywhere else, and the criteria for a Rule 19 dismissal. I'm not sure you're without recourse. Why can't you do what I suggest? You go to the Secretary of the Interior and say, Mr. Salazar, you've made a mistake. You have recognized an Indian tribe that, as you characterize it, is a phantom. It no longer exists, and it needs to be delisted. And then you need to get a decision from the Secretary saying, no, I meant what I said when I listed them. And as far as the Interior is concerned, they're a real Indian tribe. Well, the only decision we got was nothing from them. But you didn't pursue it. There are remedies. If an administrative agency won't do its job, then you come into court. That's a different lawsuit under the APA. The problem is I think there's a whole lot of cases that say where it's futile to pursue an administrative remedy because they're just ignoring us, letters, correspondence, a formal appeal, administratively, and we get absolutely nothing, that I would have to argue it's a waste of time. I think we waited two years for some kind of action. Under the Administrative Procedures Act, claiming that there is a violation of the agency's duty to act when it has failed to act. Well, I think that's what we basically alleged in our complaint here. But you didn't do that. They acted improperly in approving these things. I think that's another way of saying that they didn't do their job. They're charged with the responsibility of licensing Indian tribes, and there's no inherent sovereign right to have gaming. They have to come to the federal agencies to get approval. Gaming is a separate question. First, you have to decide whether or not it's a recognized tribe. And if the answer is yes to that question, then we look to the Indian Gaming Statute to determine under what circumstances the Department of the Interior will approve a petition for gaming activities in Indian country. That's really what you're challenging. You don't want gaming activities going on on this reservation. For this particular piece of land, I'm even conceding somehow that they were a lawful tribe and didn't have to go to court to prove it because they had immunity and you couldn't challenge them in court, that nevertheless the land upon which the federal government has proposed to allow this gaming is fee land, not any of the categories of land authorized by the statute, and that can be challenged as a decision under the Administrative Procedure Act that's challengeable. In fact, it says in the statute 2714 in district court and is deemed to be a final action. Okay. I think we have your position in mind. I'll give you some time on rebuttal, but let's hear it from the front. Thank you. Good morning, Your Honors. Patrick McCoy, the Buena Vista Rancheria of Miwok Indians. Please, the Court, the Court signaled we're not here to talk about the merits. The merits are. Well, it's not quite that simple. The question is did the district court abuse its discretion in ruling under Rule 19 that they were indispensable parties, but there is a certain overlap between the merits issues and the Rule 19 question that makes this a little more difficult than that. So I think what you see in Judge Shub's order to answer your question about did Judge Shubelow commit clear error of judgment or abuse his discretion, we believe clearly not. But to Your Honor's point, is there some looking under the hood, so to speak, to see if the claims that the absentee is making with respect to the litigation, are those claims meritorious? Are they frivolous? Are they patently frivolous, as the Ninth Circuit has used that phraseology? Clearly, here, that's not the case. And Judge Shub, in his October 4th order, even said the tribe, the Buena Vista tribe, is federally recognized. This is an Indian tribe. And I think just like the panel here, you look at that list to determine whether Buena Vista is on the list. And if they're on the list, they're federally recognized. And it really is that simple. Few things in the law are that simple, as we know. But if you are able to have your tribe's name placed on that list, it is unassailable that you are a recognized tribe. In fact, in footnote 4 of our answer brief, we include some language from the Indian Tribes List Act, and this is an act that Congress passed to order the Interior Secretary to annually publish its list, who is federally recognized. Now, in that footnote, in that list act, the statute talks about how a tribe can make it onto that list. And there are three different ways. It's, one, through the Part 83 regulatory process for a tribe that has never been recognized as a tribe. Number two, of course, by act of Congress. And number three, through stipulated judgment. And that's, of course, how this tribe was not listed, but was relisted. So it was terminated in the 1950s, and as we know, wrongfully terminated by Congress because the government failed to fulfill certain pre-termination responsibilities that it had. That Tilley-Hardwick litigation was brought. The 17 Tilley tribes, as we call them, of which Buena Vista is one, were the plaintiffs and were restored to federal recognition through that first of two stipulations, the year 1983 stipulation, that very clearly, unassailably required their re-recognition and relisting on that list. Is there a regulatory pathway at this point where an entity like Friends of Amador County could challenge that relisting per the 1983 stipulation? Although it may ultimately cut against our position, I don't think that there is. I think the List Act, which is cited in footnote four of our answer brief, is pretty clear that once a tribe reaches that list, there's only one way to get them off that list, and that's an act of Congress. And so that relates to another idea in our brief that a suit to effectively delist an Indian tribe that's been placed on the list is devoted to the political branches of government, the executive. It's not the non- Why can't the Secretary of the Interior announce I've made a mistake and this tribe does not, in fact, comply with the criteria contained in the DOI regulations? And in order to correct that mistake, I am removing a particular tribe from the list. Are you saying that requires an act of Congress? According to the List Act, that result may be precluded by that List Act. So there's great attention. What happens if all the members of a tribe die off? That's not unheard of in the history of Indian tribes. Why suppose the Secretary has Congress deal with it? I'm not aware that that's ever- But I understand- It wouldn't require an act of Congress? The Secretary couldn't simply say, you know, there are no more Laytonville Indians left, so I'm removing them from the list because there's no one to provide services to in Laytonville anymore? Perhaps that's within the Secretary's discretion under the first couple of statutes in Title 25. I'm not aware of any case like that. I'm not aware of a situation like that. Again, great care is taken before a tribe's name is placed on that list. That is a sacrosanct list that's- Well, because once you get on the list, then does it not entitle you to services from the Bureau of Indian Affairs, including money and other assistance? Yes, it entitles you to a government-to-government relationship with the United States. That's what that does, that listing does. So it's not an annual list, as the appellants allege that it is. It's just put together sort of annually and willy-nilly for purposes of determining who may have services and who may not. It is a sacrosanct list, and once you reach that list- And beyond that, again, I don't believe we're here for the merits. I believe we're here to determine whether a judge should have committed error. But it is unambiguous that this tribe was restored to federal recognition through that 1983 stipulation. There's just no way around that. You can't come to any other result. So would the district court here not have authority to rule that, as Prince of Amador County wished, that this tribe is not a legitimate tribe for purposes of Rule 19? Well, a couple of answers. I think number one is I think that's a non-justiciable issue for a federal district court. I think that's devoted to the political branches of government. And we cite cases, a Kauai-Iloa case, if I'm not mispronouncing that, versus Norton in our answer brief. That question of whether to remove a tribe from that list is a political question and not for district courts to engage in. So I don't believe- What's the current status of the gaming license? Is there a casino that has been built and in operation? No, there is nothing on the land except some older houses and whatnot. Can you tell us about the D.C. Circuit case? The opposing counsel only had partial information. What would you like- Is that going to have an effect on us? I mean, that seems to be challenging the gaming compact or the amendment to the gaming compact, correct? It is. So that case is similar to this. So instead of the Friends of Amarillo County, the plaintiff there is the county alone, and the defendant in that is the United States alone. So similarity there. And they amended their complaint so that the only thing that they're alleging at this point is that the process by which the compact was approved, i.e., that no-action approval, violates the APA because they allege that the lands don't qualify as Indian land. So it has similarity to this case in that regard. Once we achieve dismissal of this case based on the conflict of interest we believe exists, we took that conflict of interest, new information, to the district court in D.C. And our request was denied based on untimeliness. You know, it's several years into that litigation. And we have appealed that. That appeal is now effectively just sitting at the D.C. Circuit. Has the United States moved to dismiss the action under 12b-6 because the district court has no authority to adjudicate the question of what land is Indian land? They, the United States earlier moved in that case, not in this case. They answered this case. In that case they moved to dismiss on 12b-6 because that decision of whether to allow 45 days to elapse and allow the compact to go into effect, the United States argued was, one, committed to agency discretion by law. So there's no APA review of that. Now, the D.C. Circuit reversed, remanded the case to the district court. And so that's where it sits now. And at the ---- So the district court granted the 12b-6 motion, but the D.C. Circuit reversed it? Yes. On that issue. So that suggests to me that there's a D.C. Circuit decision out there that says that it is a justiciable issue. No, not on the Indian lands. The particular issue that the United States moved to dismiss on, that the district court granted, was whether or not the United States' decision to allow that 45 days to elapse, it's no action approval, is challengeable under the APA. So the government has not suggested to the D.C. District Court that it is without power to decide the question of whether this is Indian land or not? In its motion to dismiss in the district court, it mounted a vigorous defense on several bases, 12b-1, 12b-6. So the issue ---- I'd like to let him finish his answer. So is the answer to my question, they sort of took a blunderbuss approach, but not as focused as my question. I don't believe that, and I don't know the answer in particular. I don't believe that they said that it was non-justiciable. I think they went to that, the merits of that 45-day, that no action approval. That's what the United States' interest was in that litigation, because that's what the plaintiffs attacked. I was involved in a case out of the Pacific Northwest about two years ago involving, I think it was a Class II gaming license. And the issues involved in that case were the construction of a casino on land. And was it trust land because it was not located within the exterior boundaries of the reservation? And nobody suggested that the federal district court or the court of appeals lacked the authority to answer the question of whether or not this was Indian trust land, and therefore an appropriate situs for a Class II gaming license. I'm a little... To answer that, I may have to revise, if I misanswered earlier. The non-justiciability that I spoke about just a moment ago goes to the tribes listing on that list. But how is that different from a determination by the Secretary that a particular parcel of land is or is not Indian land? That's an entirely different question. It's a separate question. I agree. But it seems to me that your position should be the same, that courts shouldn't be resolving that question either, that that's a question that's committed to the political branches. No, that's not our position. Our position is that whether a tribe is a tribe or not under federal law is non-justiciable. I wouldn't apply that principle to whether a court can determine whether lands are Indian or not. So the district court in this case could reach, in your view, could reach the question of whether the lands at issue are legitimate Indian country. Do you agree with that? No, I don't agree with that. Only if this case was entirely different. The problem with that is, of course, that's a fundamental interest, a substantive interest of this tribe. This is a restored rancheria. Putting the Rule 19 issue aside for a moment. Okay. And just looking at if the tribe waived that requirement, say, could the district court reach that issue? So we're now at the merits. Right. And the friends of Amador County are saying this is not legitimate Indian country. Would the district court have the authority to hear it, take evidence, and rule on that issue? Assuming we waived. Assuming the tribe was a party. It waived the whatever sovereign immunity. Right. So an entirely different case. So I suppose I don't know the answer to that. My first impression is that a district court probably would have that power. The problem with that is everything about this case. Okay. So here the tribe has not waived, and really the decision on Rule 19 was that it is a legitimate, federally recognized tribe and therefore has sovereign immunity, and then the district court went through the other tests. It wasn't based on whether the land was Indian country or not. I didn't see that as playing a part of the district court's determination. Is that correct? That's correct. It wasn't part of the district court's determination. I suppose as an addition to my answer about justiciability on the Indian lands question, there may be a flaw in bringing that kind of claim, given the way that this land was restored to reservation status, in that it was the agency's discretion. The agency used the discretion it has to settle that Tilly Hardwick litigation, and it used its discretion to decide to settle it through that stipulated judgment. So there's an awful lot of discretion going on there on behalf of the agency. It doesn't seem to me that that falls outside of the preclusion in the APA concerning decisions committed to agency discretion by law. I think that's the right answer to that question, but obviously we didn't reach that because... So is Amador County then challenging the settlement that recognized this as Indian land? They are alleging, they have alleged that the, specifically that the no-action approval is challengeable under the APA here because this is not Indian lands. And the D.C. Circuit did reverse on that, sent it back to the district court, and at the end of the circuit's decision it said, which of course is dictated, it said, we've got a big row to hoe ahead of you because you signed a stipulation in 1987 agreeing to treat this rancheria as a reservation for all purposes under federal law. So we're going to send this back down to the district, the county, it seems to us you may have some sort of preclusion. So the parties to the 1987 stipulation was the county and the tribe and the federal government? The county and the tribe and the United States is bound by that judgment. It was basically a consequence of the 1983 stipulation. So the same, the very same court retained jurisdiction. So it restored all 17 Tilley tribes in that first stipulation, and then independently with the counties where those 17 tribes are located, that second set of stipulations was entered into under the same case, the same jurisdiction, and the United States is bound by that. The United States has said that it's bound by those 1987 stipulations, and that's clear from the 2005 Indian lands opinion rendered by the National Indian Gaming Commission in which the solicitor's office concurred. So they concurred that they're bound by that decision. It's a result of that litigation. They used their agency discretion to resolve that litigation in that manner. So shall I proceed to ruling? Go ahead. This is actually helpful, but... I'm here to answer your question. No, no, no, no. Go ahead and address the Rule 19 issue. We think Rule 19 is extraordinarily straightforward. The judge did not abuse his discretion below. He found that several, and I think he counted ten, legally protected interests implicated by the plaintiff, implicated by the complaint. Those interests directly attack, as Judge Shub found, directly attack the tribe in its most fundamental interest as a tribe, of its Indian lands, of its compact, the ability to assert jurisdiction and govern the reservation. One could hardly imagine a lawsuit filed that more directly challenges the tribes and absent tribes. The thing that most concerned me was the point opposing counsel made, which is the last factor about no adequate remedy for the plaintiffs. What do we do about that? Well, a couple of answers. Number one, Congress specifically provided a remedial scheme in IGRA saying who could sue under IGRA and who couldn't, states and tribes and, of course, the federal government, but states and tribes primarily with respect to certain questions. So as Judge Shub found below with respect to the state's motion to dismiss and the dismissal of the governor in particular, there is no private right of action under IGRA. And to the extent that a plaintiff is left without a remedy and one is confronted with having to balance, essentially, a plaintiff's right to bring claims with sovereign immunity, this Court has held very squarely and hasn't backed down from the principle that tribal sovereign immunity is the more important of those interests in that balancing, and that was American Greyhound. Nothing about the Ninth Circuit's decisional law since Greyhound has changed that principle. So you can see, you can imagine, I don't know if this is the situation, but you can imagine a situation where the state has entered into a compact with the tribe for a casino and the neighboring communities are opposed to it, but the state is not going to sue. And they effectively then have no remedy. It does seem to be something of a public rights issue. And it's your view that Congress contemplated this and said it's, we think that the neighbors, the public's interest in preventing a casino being developed here is outruled by the tribe's sovereignty. Is that your position? I think that's one answer. That's not our only position. I think that interest of the public was mitigated recently in Patchak, which had to do not with gaming approvals or Indian lands or Indian tribe, it had to do with the Indian Organization Act. So many times these days I think most tribal casinos have been built and there are only a few left to be done. But these days when a tribal casino is going to be built, there's usually an issue over putting land into trust for that purpose. It's not required here because it's parceled within a reservation. It's very clear that it's gameable lands under IGRA. But the Patchak case dealt with the public's right, essentially Mr. Patchak's right, to be heard concerning that fee-to-trust process when that fee-to-trust process is going to lead to gaming. So I think some of Your Honor's concerns or the public rights concerns that you express have been mitigated in that case. This case is different because it's a reservation. This land is within the reservation. It's unassailable. You just read the words on the page of IGRA. This land is Indian lands, period. But, again, to reemphasize the answer, when it comes to balancing those interests, tribal sovereign immunity is the more important interest. In this case that ---- I'm assuming that somebody induced Amador County, whether it was the friends of Amador County going to the Board of Supervisors, but somebody induced the county to challenge the gaming permit, right? I'm not sure what motivated them to sue. There was long negotiations over an intergovernmental agreement between the tribe and the county over how the tribe would mitigate impacts and whatnot. Once the casino was in operation? Right, once the casino would go under operation, how is the tribe going to mitigate those concerns? And that was kind of a long negotiation process with the county that led to a lawsuit, essentially, rather than an agreement. Well, there is an agreement, in effect. Oh, there is? Yes, there is an intergovernmental agreement between the county and the tribe. Yes, and it's in effect. Yes, it's in effect. So I'm not sure what has motivated the county to continue. Yeah, so what's the county arguing about now?  They continue to argue, well, it's been a long piece of litigation. They argued the process by which the compact was approved, the no-action process was challengeable under the APA, went to the circuit, came back down in their favor, and that's where it sits. So we're not entirely sure what the county's ultimate goal is. We have our guesses. I mean, this case is beginning to take on attributes of, what's that old English case that went on for generations so that no one living could remember what started the fight? I mean, when is this thing going to end? We hope when both plaintiffs realize, as we realize, that each complaint is patently without merit. You just read the words on the page. You add up. I'm not sure that's a fair characterization of the complaint that's before the district court here. Right. I mean, I think certainly in reading the criteria by which the Department of the Interior determines who is and who is not a legitimate tribe, I had some questions myself as to whether or not... Your Honor, with respect, those are not criteria that are applied. Those are criteria that are applied to a group that has never had federal recognition. And so it's a very onerous burden to prove, even though you've never been recognized by the United States as a recognized tribe, these burdens that you must overcome to reach federal recognition. But there are other ways that tribes become recognized, earlier by treaty, then by executive order. And then Congress didn't like that. There's a little too much control in the office of the president. And so it's active Congress. It's judicial stipulation, which is the case here. So there are three different ways a tribe can become federally recognized. But I think the correct phraseology here is re-recognize. The tribe was terminated wrongfully in the 1950s, restored to federal recognition by judicial stipulation. And so, in effect, this lawsuit is an attempt to re-terminate the tribe. This tribe has been through it probably worse than many others. The California Rancherias have been through it historically worse than many other tribes across the country, and not to diminish what happened across the country. But the California Rancherias in particular have been subjected to a particularly harsh history. And so this lawsuit is an attempt to re-terminate the tribes. And, in fact, all the way from the complaint to the briefs, to the appellate briefs, even to the last papers that the appellant's attorney filed, really re-emphasize how directly the plaintiff is seeking to challenge the substantive rights of the tribe here. And you can't – I mean, it's a fundamental principle of law, and one re-announced in Alto v. Black that was just issued December 26th by the Ninth Circuit, that you can't adjudicate, you can't seek to alter the substantive rights of a person unless that person's in a courtroom. That's just – that's the law. You can't get around that. And so the fact that we didn't get to the merits below is perfectly appropriate. We don't get to the merits. You have to go through Rule 12 first. You've got to make sure that you've got the right parties in the courtroom. That's why we didn't get there. It's as if the appellant would have us jettison the entirety of Rule 12. Well, so far, in my close reading of the cases, I haven't seen that willingness, that appetite on the Ninth Circuit today. Go ahead. What is your response to the appellant's position that there should have been an ancillary hearing for them to try to demonstrate that this is not an indispensable party? As to whether the tribe is a tribe? No. I think the court below is correctly not granting such a hearing. You don't need a hearing to determine whether a tribe is recognized or not. As I said, I think it is that straightforward that if a tribe is on that list, they're a tribe, and that's a political decision that came about through agency discretion. I don't – I think that that would effectively consume Rule 19. That's an adjudication of the tribe's most fundamental interest, its recognized status under federal law. And so if that were to occur, you would effectively ignore Rule 19 because you're allowing the plaintiff to alter or seek to alter fundamental substantive interests of an absentee. So I just – I think the court below is correct in not going in that direction. It would have been futile. I thought your position was that it's just not a justiciable issue. As to the tribe's legitimacy. Legitimacy, yes. The hearing would be futile because the court doesn't have the power to declare that it's not a legitimate tribe once it makes it on the list. Isn't that the short answer? That was the final answer I was preparing to articulate. Yes, it would have been futile because as to jurisdiction, there would have been none because that's a non-justiciable issue. Okay. Anything else? All right. I've let you go way over and I'm going to give Mr. Marino a little extra time in rebuttal. Thank you very much. Thank you. Thank you, Your Honor. That last point that the court was making is an interesting one because if it was not justiciable, how could we have the Muwekma case? Because the Muwekma Ohlone tribe was claiming to be a tribe or should be re-recognized as a tribe, and the court said no because you don't meet these specific criteria. Was it listed at the time that that question was laid out? They were trying to get listed. No, no, no, but they weren't on the list. Well, isn't that a significant difference? Well, only to the extent that the List Act, the counsel refers to, of course, has been amended since then requiring this congressional approval to delist a lawful tribe. At the time this tribe was placed on the list, it was the Potts tribe, which was her and her two children, and Mr. Riesling from the BIA determined in 2001 that that was improper. She was not entitled to organize that tribe and suggested what had to be done to Pope, who he determined was at least a lawful descendant of the Olivers, to go out and find people like my clients, B. Crabtree and June Geary, and reorganize or properly organize a tribe. Then you could place it on the list. In effect, Mr. Riesling delisted the existing tribe, the Muwekmas, or rather the Buena Vista tribe that Potts created and was placed on the list. I'm sorry, maybe I misunderstood. Is part of your lawsuit a request by Ms. BIA and Ms. Crabtree to be recognized as members of the tribe? Well, they expected, and I think I pointed out, that they were never notified of Mr. Riesling's decision. He mentions in his decision that right to appeal. Let's just start with a yes or no answer to my question, and then you can elaborate any way you want. But is that one of the claims that's lurking in this litigation? I missed that one. Yes, their claim that they should have been consulted on the organization of this tribe way back when and never were. So they think they're entitled to become members of the tribe. And to vote for the Constitution, et cetera, et cetera. So how do we get around Ninth Circuit law that's pretty clear on our lack of authority to determine who is or who is not entitled to enrollment as a member of the tribe? Well, you know, I'm not sure you're not entitled to it. I mean, that case that counsel cited in his letter brief, Alto v. Black, involves enrollment issues. But I thought that case somehow involved the Department of the Interior in adjudicating that question. I think, I mean, the last time I had one of these enrollment cases, we had a casino in operation outside of Fresno that apparently was quite successful, and the tribe was quite small. And so it was at the end of the year when they divided up the profits, it was a nice little chunk of change for every enrolled member of the tribe. And as you can imagine, there were a number of people who thought they should be enrolled, too. And we said pretty clearly, federal courts don't decide those issues. That's not within our power. There's a case you may be familiar with. I can't cite it because I don't remember the citation. A district court case involving the Valley Mewolks, a three-member tribe, and Mr. Yakima Charlie, which was one of the members, was kicked out by the other two members so they could divvy up the money they got from the state and a bigger piece of the pie. And the district court said, yes, we can. We can decide whether or not he should or shouldn't have been enrolled or disenrolled in that case. I wish I had the cite for you, but I don't. Well, I can think of at least one Ninth Circuit case on which I've sat that says just the opposite. So if all you've got is a district court decision, we win. That's true. The other thing I would point out, that that list act, by the way, provides for updating. By its own terms, that that list can be updated. But updating just means that they can add more tribes to the list, right? Maybe they could take tribes that should be there off. You don't want it to be updated. You want them to be delisted. Or downdated. Yeah, downdated if there's such a thing. The fact that they provide for that, I think, suggests that if they realize that there's a tribe on there, a so-called tribe, that shouldn't be on there, that they can take it off. Because as you point out, that entitles them to money and all kinds of benefits, not the least of which is a casino in the middle of somebody's neighborhood. The suggestion that this tribe was restored, I won't belabor it too much because it's very heavily briefed, there was no restoration of a tribe. The Rancheria Act provided that an individual Indian lost their status as an Indian if they were deeded land, Rancheria land, under the Act at the time. So they lost their status as Indians. That's what the class action was about, as well as some promises that the government made to the Rancheria people, fix the roads, fix the water, and all that. The key was that they weren't going to have tribes. That was the failed policy that we were just going to assimilate them all into white society and we weren't going to have tribes anymore. Now Congress chose a different path. It mimics in some way the Allotment Act of the 1890s where they said that's a disfavored policy now. But the point is it didn't restore any tribe that didn't exist. The judge was quite clear, and I thought he was very specific. I thought this land was purchased in the early 1900s by the federal government as a reservation for homeless Indians. In 1997 it was purchased in fee by the federal government as a solicitor's opinion, which is in the record. For homeless Indians. Well, for any Indian, not a specific tribe. That's an important point because it was available to anybody that wanted to come and live there and get an assignment from the government. Were they Indian or not? No, I think they probably were. Maybe they said they were Indian. I don't know. I don't think they ever checked, but I'm sure they had to say they were Indians to get an assignment. How does that differ from establishing a reservation and moving all the Cherokees onto it or whatever Congress decided? Well, because a reservation had to be established previously usually by treaty, by Congress. And then when they enacted the Indian Reorganization Act, they allowed the Secretary of Interior to provide lands after 1934, which would be reservation-type lands. They were in trust, but it was treated like a reservation. Prior to that time, the only mechanism to create a reservation was through an act of Congress or a treaty of some kind. They developed this so-called executive administration of creation of reservations under the Mission Indian Relief Act, where the president could say, well, I'm going to set aside some land for the Morongos or whatever tribe. But that was never done in the case of Buena Vista. It was never an executive directive creating any kind of a federal land for the four people there, the Olivers. And that never mention of the Buena Vista Rancheria Maywalk Indians, that was a name that was created by Donna Marie Potts in like 1987 or so. Well, I mean, I looked at just a couple pages on that list, and I mean, you know, I'm a fifth-generation Californian. I recognize a lot of these names on that list, and some of them, as far as I know, don't have any members anymore. They've all died off. I mean, wasn't it Ishi who walked out of the Coast Range and ended up living at UC Berkeley, who was the last of the Yuki tribe in Northern California? Well, and that's one of the reasons, frankly, why I mentioned the Mwekma case in my letter brief, is because the court said we can't just accept somebody's word that we're a tribe of Indians. I mean, if that were the case, nobody could ever bring a lawsuit. That's why we have the Department of the Interior. I mean, that's why we've delegated to the secretary the responsibility for looking after the welfare of the Indian tribes, and that's why the list was created. As long as they don't act arbitrarily, capriciously, and in violation of the law, which is where we stand now. We claim that this is an APA violation, not only to recognize a nonexistent tribe that was created out of whole cloth, but also authorized gaming on fee land that's not eligible for gaming. Okay. You're starting to repeat yourself. I think we have your arguments in mind, and we'll get you an answer. Do you want to make one? Sure, go ahead. The letter that Penny Coleman wrote in 2005 could not possibly have somehow bound the United States to a stipulation made in 1987 solely between the county of Amador and the plaintiffs in that class action. I mean, she couldn't buy a letter behind the United States without a clue. Why can't the solicitor of interior, in essence, ratify or reconfirm a prior stipulation that the United States entered into? I mean, we might have, but the United States didn't. It's like a legal opinion saying it's a valid agreement, and it was valid in 1987, and it's valid in 2005. It wasn't done, and it's not part of the briefing, but the determination about it. Are you going to cite the record on me now? I'm trying not to. The determination of whether land is or is not eligible is the responsibility of the Department of Interior, not the National Indian Gaming Commission. There's been a lot of heated memorandums on that issue, but the last state that I read was that that's our job. You decide about the gaming. Okay. Thank you both. All right. I don't normally allow for a rebuttal, but it's an interesting issue. Quick rebuttals in Alto.  Because the tribe twice delegated to it in its constitution and later the right to determine membership issues. That's a very different kind of case, and I've never actually seen one in all of my years. I was surprised when I read it. Yeah, I, too, but I've never seen that. It's kind of an older concept that was taken out of many tribal constitutions, but that one is there. Okay, that's one point. So second answer is, if the plan has ever had APA relief against the 1983 stipulation and the 1987 stipulation, which we believe probably they wouldn't because that's an act of agency discretion, that statute of limitation dropped 49 years ago. So if it ever had a claimant of the APA, it's time-barred now. Okay. Thank you. Thank you both. The case is submitted. Thank you for your argument. We'll do the best we can with it.
judges: Alarcon, Tallman, Ikuta